UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | NO.  3:09 CR 306 |
| -vs- : | |
| : | |
| CALVIN DRIVER : | |
| and LLOYD THOMAS, JR., : | |
| Defendants : | |

## TRIAL MEMORANDUM OF THE UNITED STATES

This case involves three inmates assaulting another inmate and assaulting and resisting correctional officers   The indictment sets forth the pertinent facts of the case as follows:

1. On or before May 17, 2009, the Defendants agreed to assault an inmate who was incarcerated at the United States Penitentiary at Canaan, Pennsylvania.

2. On or about May 17, 2009, the Defendants Calvin Driver, Ronald Tsosie, and Lloyd Thomas, Jr., assembled inside Cell 124 within the C-1 Unit of the United States Penitentiary at Canaan, Pennsylvania.

3. On or about May 17, 2009, Defendant Calvin Driver exited Cell 124 into the common area of the C-1 Unit of the USP-Canaan holding a lock tied to a sheet.

4. On or about May 17, 2009, Defendant Lloyd Thomas, Jr. exited Cell 124 within the C-1 Unit of the USP-Canaan, spoke to the Defendant Calvin Driver briefly, and then approached the inmate victim.

5. On or about May 17, 2009, the Defendant Lloyd Thomas, Jr. shook the inmate victim's hand and then accompanied the inmate victim from the common area into Cell 124 within the C-1 Unit, followed by Defendant Driver.

6. On or about May 17, 2009, Defendants Calvin Driver, Ronald Tsosie and Lloyd

Thomas, Jr. began beating the victim inmate inside Cell 124.

    7.  On or about May 17, 2009, Defendant Calvin Driver dragged the bleeding victim inmate from the cell while armed with the lock tied to the sheet.

    8.  On or about May 17, 2009, Defendant Calvin Driver repeatedly struck the inmate victim in the head and body with the lock and kicked him in the face and torso.

    9.  On or about May 17, 2009, Defendants Ronald Tsosie and Lloyd Thomas, Jr. exited Cell 124 and began repeatedly punching and kicking the victim inmate in the common area of the C-1 Unit.

    10.  On or about May 17, 2009, Defendants Calvin Driver, Ronald Tsosie, and Lloyd Thomas Jr. refused and resisted orders from Correctional Officers to get on the ground.

    11.  On or about May 17, 2009, Defendants Calvin Driver and Ronald Tsosie took up defensive postures against Correctional Officers while holding items that could be used as a weapons.

    12.  On or about May 17, 2009, Defendant Ronald Tsosie steps toward a Correctional Officer yelling and holding a chair that could be utilized as a weapon.

    13.  On or about May 17, 2009, Defendant Ronald Tsosie put down the chair and raised his arms and took up an offensive stance against Correctional Officers, refusing orders to step back.

    14.  On or about May 17, 2009, Defendant Ronald Tsosie picked up a chair and held it in front of him as Correctional Officers approached.

    15.  On or about May 17, 2009, Defendant Calvin Driver rushed toward a Correctional Officer and struck him in the face with a closed right fist.

    16.  On or about May 17, 2009, the Defendants Calvin Driver, Ronald Tsosie, and Lloyd

Thomas, Jr. resisted and struggled with Correctional Officers while being placed in restraints.

Incident Summary:

On May 17, 2009, at approximately 8:21 p.m., Calvin Driver, #18882-058, Lloyd Thomas, #20984-008, and Ronald Tsosie, #29723-008, assaulted inmate Ismael Buenrostro-Tovar, #83418-179, in the unit common area. Inmate Driver was observed striking inmate Buenrostro-Tovar in the head and upper body with a lock attached to a sheet, and inmates Thomas and Tsosie were observed striking and kicking Buenrostro-Tovar in the head and upper body. Responding staff ordered all three inmates to drop their weapons and lay on the ground, which they refused. Inmate Driver then swung at staff several times with a lock attached to a sheet, and inmate Tsosie armed himself with a chair and swung at staff several times. Inmate Driver then struck the Compound Officer in the face with a closed fist. Immediate force was used to place all three inmates on the ground and restrain them. Inmate Buenrostro-Tovar was medically assessed and transported to an outside hospital for further treatment. The Compound Officer was medically assessed and taken to a local hospital for treatment.

Video Surveillance Review:

A review of video surveillance recordings of Unit C-1 captured by cameras 25, 26, 27, 28, 269, 270, 271, 272, 273, and 274 revealed the following. Cameras 269 and 273 captured the majority of the incident and provide the best record of the incident. The following is a summary and time line of the incident:
(Note: The recorder time stamp setting is one hour ahead of the actual time of the incident. All times listed in the summary occurred between 8:13 p.m and 8:18 p.m.)

8:13:39 p.m.: Inmate Driver exits cell 124 holding a lock tied to a sheet behind his back and takes a position behind inmate Buenrostro-Tovar, who is sitting in a chair watching television.

8:13:55 p.m.: Inmate Thomas exits cell 124 walks over to Driver and speak with him briefly before approaching inmate Buenrostro-Tovar. Thomas then shakes Buenrostro-Tovar's hand and invites him into cell 124. Thomas and Buenrostro-Tovar then enter cell 124.

8:14:22 p.m.: Inmate Driver follows Thomas and Buenrostro-Tovar into cell 124.

8:14:38 p.m.: The door to cell 124 swings open, and inmates in the unit begin to react to noise coming from the cell.

8:15:11 p.m.: Inmate Driver exits cell 124 armed with the lock tied to a sheet, and dragging inmate Buenrostro-Tovar across the floor. Inmate Buenrostro-Tovar is bleeding heavily and leaving a blood trail as he is being dragged.

8:15:14 p.m.: Inmate Driver strikes Buenrostro-Tovar in the head with the lock and then kicks

him in the face.  He then drags inmate Buenrostro-Tovar toward the center of the unit.

8:15:20 p.m.: Inmates Thomas and Tsosie exit cell 124 following Driver and Buenrostro-Tovar.

8:15:25 p.m.: Inmate Driver strikes Buenrostro-Tovar with the lock and kicks him several times.  Inmates Thomas and Tsosie begin kicking Buentrostro-Tovar.

8:15:30 p.m.: Inmate Driver strikes Buenrostro-Tovar in the back with the lock and then kicks him in the face.  Inmates Thomas and Tsosie repeatedly kick inmate Buenrostro-Tovar on the back and sides.  Inmate Driver then strikes Buenrostro-Tovar in the head with the lock, and inmate Thomas begins striking him on the back with closed fists.  Inmate Tsosie continues to kick Buenrostro-Tovar on the side and back.

8:15:45 p.m.: Inmate Driver walks toward cell 125, while Thomas and Tsosie continues to kick and strike Buentrostro-Tovar.  Inmate Driver then appears to be yelling at other inmates in the unit, and at the inmates in cell 125.  Inmate Driver then enters cell 125 and is followed by inmate Thomas.

8:16:08 p.m.: Responding staff enter the area.  Inmates Driver and Thomas exit cell 125, and inmate Driver takes up an offensive stance against staff.  Inmate Tsosie also assumes an offensive stance against staff as staff begin ordering the inmates to the ground.

8:16:23 p.m.: Inmate Driver rushes toward staff while swinging the lock, and is followed by inmate Thomas.  Inmate Driver forces staff to retreat behind the stairwell, and then walks back toward the center of the unit.

8:16:31 p.m.: Lieutenant Sorensen enters the area, picks up a chair to defend himself, and orders Driver to drop the lock.  Inmate Driver then rushes toward Lieutenant Sorensen swinging the lock.  Inmate Thomas continues to follow inmate Driver.

8:16:33 p.m.: Inmate Tsosie enters cell 124, picks up a chair, exits the cell and walks toward staff.  He then takes up an offensive stance while holding the chair in the air.

8:16:42 p.m.: Inmate Thomas grabs inmate Driver from behind, takes the lock away and throws it to the ground toward staff.  Staff then kick the lock behind them and away from the inmates.  Inmate Driver continues to yell at staff while being restrained by inmate Thomas.  Inmate Tsosie continues his offensive stance prepared to swing the chair at staff.  Inmate Driver then walks toward inmate Buenrostro-Tovar and kicks him before being pulled back by inmate Thomas.

8:17:07 p.m.: Officer Forney orders inmate Tsosie to drop the chair.  Tsosie then steps toward Officer Forney yelling and holding the chair in the air.

8:17:19 p.m.: Inmate Tsosie puts the chair down, raises his arms and takes up an offensive stance against Officer Forney.  Officer Forney then orders Tsosie to step back.  Inmate Tsosie then picks up the chair and holds it in front of him as staff approach.  He then walks toward inmates Driver

and Thomas.

8:17:44 p.m.: Inmate Driver attempts to pull away from inmate Thomas, during which Driver's shirt is removed and an object is dropped by Driver. As Driver is pulled back by Thomas, Officer Leavesley picks up the object (homemade 7 inch wooden weapon) and secures it. Inmate Driver continues to attempt to rush at staff while being restrained by inmate Thomas, and inmate Tsosie continues to brandish the chair and yell at staff.

8:17:57 p.m.: Inmate Driver breaks away from inmate Thomas, rushes toward Officer Forney, and strikes him in the face with a closed right fist.

8:18:01 p.m.: Staff rush all three inmates, force them to the ground, and restrain them. Inmate Buenrostro-Tovar is then moved to Health Services, and Driver, Tsosie, and Thomas are moved to the Lieutenant's Office.

Staff Victim.

On June 21, 2009, Correctional Officer Forney submitted a memorandum. He stated, "On Sunday the 17th of May 2009 at approximately 8:25 p.m myself along with other evening watch staff responded to a call for assistance for inmates that were drinking in the unit which quickly turned into a call for inmates fighting in the unit. Myself along with other responding staff entered C-1 Housing Unit through the compound side to find 3 inmates in the common area not far from cells 110 through 116. Inmate Tsosie, Reg.# 20984-008 was swinging an inmate plastic chair. Inmate Driver, Calvin Reg.# 18882-058 was swinging a sock which appeared to have something in it. Which turned out later to be a padlock in a sock. Inmate Thomas, Reg.# 20984-008 was right behind the inmate with a lock in a sock. There also was an inmate laying down on the floor which appeared to be bleeding badly from his head this was inmate Buentrostro, Reg.# 83419-179. After entering the unit into the incident. I positioned myself near one of the TV poles facing the cells 110-116 along with other responding staff. The 3 inmates were moving around the area in front of those cells. Inmate Tsosie which was the inmate that had the inmate plastic chair squared himself in front of me like he was going to swing. I feeling like he was going to swing the chair I gave him a verbal command a couple times to drop the chair, back up and get on the ground. After a few times the inmate dropped the chair and put up his fists and got closer to me and said "want to fight?" still feeling threatened I gave the verbal command a few times to this inmate to back up and get on the ground. That inmate started to reposition himself when inmate Driver, Calvin (the inmate who had the lock in a sock which at this time did not have anymore) went by him and came up towards me. At this time I gave inmate Driver, Calvin a verbal command to get back and get on the ground. After I gave him that verbal command one time inmate Driver squared himself in an offensive stance and lunged towards myself hitting me in the left eye and nose driving my head backwards so hard that it took me off balance and knocking my glasses off my face and breaking them before I could react to defend myself. At the moment I was struck by inmate Driver, Calvin. Inmate Driver, Calvin quickly moved away from me while myself and responding staff converged on the 3 inmates. I went to restrain the closest inmate. Other staff assisted myself in taking the inmate to the ground to control the inmate using the least amount of force necessary. This inmate was actively

resisting but with the assistance from other staff members we were able to get the inmate to the ground using the least amount of force necessary.  After we got this inmate to the ground he was still actively resisting us.  I gave this inmate verbal commands to stop resisting.  After a few minutes we gained control of the inmates arms and restrained the inmate.  After all inmates involved with this incident were restrained the responding Lieutenant that was at the incident ordered me to get assessed by medical staff.  After the medical staff assessed me, the Lieutenant informed me of the assessment, and pictures being taken of my face and glasses I was sent out to Wayne Memorial Hospital by an Institution car driven by one of the staff.  The injuries I attained during this incident were as follows. 1. I received a orbital blow out fracture to my left eye along with other fractures to my orbit leading into my left nasal.  The result of the fractures caused by nose to bleed along with not being able to blow my nose due to the fracture between the eye and nose for 3 weeks.  2. My left knee obtained sprain type injury, popliteus muscle tear from taking down an inmate which caused my knee to hit the ground with such force that my uniform pants obtained a concrete stain on the left knee area of the pants.  3. My right shoulder obtained a grade 1 AC dislocation and a traumatic impingement syndrome.  Which I received while taking the inmate to the ground to be restrained.  All this was done using the least amount of force necessary."


Defendant Statements:


On June 29, 2009, SIA Carrino attempted to advise inmate Driver of his Miranda Rights and interview him in SHU.  Inmate Driver was given an Advice of Rights form which he refused to read or sign.  He also refused to have his Miranda Rights read to him.  Accordingly, no interview was conducted.

On June 29, 2009, SIA Carrino attempted to advise inmate Tsosie of his Miranda Rights and interview him in SHU.  Inmate Tsosie was given an Advice of Rights form which he refused to read or sign.  He also refused to have his Miranda Rights read to him.  Accordingly, no interview was conducted.

On June 29, 2009, SIA Carrino attempted to advise inmate Thomas of his Miranda Rights and interview him in SHU.  Inmate Thomas was given an Advice of Rights form which he refused to read or sign.  He also refused to have his Miranda Rights read to him.  Accordingly, no interview was conducted.

Medical Assessments:

Inmate Driver was medically assessed by P. Burgerhoff, Nurse, and treated for a one inch laceration and multiple abrasions to the right forearm, superficial abrasions to the right hand, a contusion and ecchymotic with mild edema to the left hand/wrist, and mild edema to the upper right cheek.

Inmate Buenrostro-Tovar was medically assessed by P. Burgerhoff, Nurse and treated for

multiple contusions and lacerations to the head.  Following the assessment inmate Buenrostro-Tovar was transported to Wayne Memorial Hospital in Honesdale, PA for additional assessment and treatment.

Inmate Tsosie was medically assessed by P. Burgerhoff, Nurse, and treated for a small superficial abrasion to the left index finger.

Inmate Thomas was medically assessed by P. Burgerhoff, Nurse, and treated for superficial abrasions to the left middle finger.

Mail Monitoring:

On June 9, 2009, a letter written by inmate Driver was found by SIS Technician Arroyo during normal mail monitoring.  The envelope was addressed to Ray Pedragon, 80 Paid Avenue, San Jose, CA 95127-2341, and contained a two page hand written letter, an Incident Report photo copy, and three pictures.  In the letter inmate Driver admits to striking inmate Buenrostro-Tovar and striking Officer Forney.  He writes, "I'm up North but getting ready to go to ADEX (ADX Florence) for 18 month.  I got into a fight with some Spanish dude his name is Buenotov-stuo.  I smashed him with a lock and then smashed the cop too.  So I'll probly go back to street court before I go to ADX I guess I really don't know."

    II. NUMBER OF WITNESSES.

At the present time, it appears that there could be as many as ten trial witnesses for the government.  Some witnesses will not be necessary in the event that stipulations can be reached.

The defendants have not indicated whether they intend to call witnesses.

    III.  ESTIMATED NUMBER OF TRIAL DAYS.

The government believes that the trial of the case will take no more than two days.

    IV.  BRIEF DESCRIPTION OF THE PRINCIPAL ISSUES.

In a nutshell, the government seeks to prove (1) that the defendants formed an agreement to assault another inmate and to resist, oppose and impede federal officers; (2) that an inmate and a guard were assaulted without just cause or excuse; (3) that the inmate and the guard were injured as a result of the assault; and (4) that a dangerous weapon was possessed and utilized during the assault.

V.  <u>ANTICIPATED LEGAL ISSUES</u>

The Government is unaware of any legal issues confronting the Court at the present time.

        Respectfully submitted,

        DENNIS C. PFANNENSCHMIDT
        United States Attorney

        \s\ John C. Gurganus, Jr.

        _____
        JOHN C. GURGANUS, JR.
        Assistant U.S. Attorney
        ID# 47220
        Suite 311, Federal Building
        Scranton, PA 18501
        (570) 348-2800

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on June 23, 2010, she served a copy of the attached:

TRIAL MEMORANDUM OF THE UNITED STATES

by electronic filing on Maureen Coggins, Esq. and Hervery Young, Esquire.

/s/ Donna Gard-Lengner

DONNA GARD-LENGNER
Paralegal Assistant